UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN HOLMES,

                                        Plaintiff,

    vs.                                                                    9:04-CV-1299
                                                                            (LEK/GJD)
JUSTIN TAYLOR, et al.,

                                        Defendants.
_____

JOHN HOLMES, Plaintiff pro se
ROGER W. KINSEY, Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that defendants have violated his First Amendment right to freely practice his religion. (Dkt. No. 1). Plaintiff seeks injunctive[1] and monetary relief. Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 19).

## DISCUSSION

**1.    Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of

---

[1] Plaintiff has been released from incarceration, thus, any claim for injunctive relief is moot. *See Clarkson v. Coughlin*, 783 F. Supp. 789, 794-95 (S.D.N.Y. 1992)(once the conduct of which the inmate complaints is no longer directed at the inmate, any personal claims for injunctive relief are moot).

showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990)(citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

**2.**    **Facts**

At the time of the incidents in this complaint, plaintiff was an inmate at Gouverneur Correctional Facility, a medium security facility. Because Gouverneur is a medium security facility, inmates are housed in dormitories instead of individual cells. Castaldo Aff. ¶ 5. The inmates sleep in cubicles with half-walls, known as "cubes." *Id.* Plaintiff alleges that he is a Muslim, and as part of the Muslim religion, he must say an "audible" prayer in the morning. Plaintiff states that on February 19, 2004, shortly after 5:30 a.m., he was praying in his cube, when defendant Castaldo

approached him, while performing his rounds of the dormitory, and told plaintiff in a "very angry" tone to pray to himself.

Plaintiff states that he continued to pray "audibly" because his religion prevented him from stopping, and the prayer that he was saying had to be said in a "whispered tone." Plaintiff alleges that defendant Castaldo returned to plaintiff's cube shortly thereafter and kicked plaintiff's chair, causing the chair to almost hit plaintiff on the head. Plaintiff claims that defendant Castaldo then repeated the order that plaintiff pray to himself. Plaintiff states that he stopped praying at that time because he believed that he was "in danger of physical violence."

Plaintiff states that defendant Castaldo then demanded that plaintiff produce his identification card, and that plaintiff complied with this order. Plaintiff states that he then attempted to explain to defendant Castaldo why plaintiff could not pray "silently," but that defendant Castaldo "cut [him] off," and made a disparaging remark about plaintiff returning to the Middle East if he wished to pray "like the rest of the muslims [sic]."

Plaintiff states that defendant Castaldo then called Sergeant Manning's office, and told plaintiff that he was "on full cube restriction." Plaintiff states that he was then taken to the Special Housing Unit (SHU). However, shortly after his admission to SHU, he became ill and had to be hospitalized for approximately eight days, at which time he was returned to the facility and placed in an isolation room in the facility infirmary.

While still in the infirmary, on February 28 or 29, 2004, plaintiff states that he

was served with a misbehavior report, charging him with disobeying a direct order, causing a disturbance, and interference.[2] Plaintiff states that while he was in the infirmary, he asked to speak to the Superintendent, defendant Justin Taylor, and that request was granted. Plaintiff states that on February 29 or March 1, 2004, he and defendant Taylor discussed the events of February 19, 2004, and plaintiff claims that defendant Taylor told plaintiff that he would "take care of the situation."

Plaintiff also states that, while still in the infirmary, he spoke to the Imam, who told plaintiff that there was nothing wrong with the way that he recited his prayers on February 19. Plaintiff states that the Imam took a copy of plaintiff's misbehavior report and told plaintiff that he would do the best he could to help plaintiff with this situation.

Plaintiff states that he was returned to SHU on March 1st or 2nd, 2004. Plaintiff was escorted to his disciplinary hearing on March 5, 2004.[3] Defendant Don was the hearing officer. Plaintiff states that he called three inmate witnesses who testified regarding the events of February 19th and presented evidence regarding how the morning prayers were said. Plaintiff states that defendant Don told plaintiff that the Imam was not working that day and asked if plaintiff wished to postpone the hearing until the Imam's return. Plaintiff states that he declined because he believed that the

---

[2] The court notes, although it is not relevant to this decision, that the actual documents indicate that plaintiff was served with the misbehavior report at 1:45 p.m. on February 24, 2004. Defendants' Ex. A at p.2.

[3] The disciplinary documents also confirm that plaintiff was taken to an outside hospital on February 19, 2004, and thus, an extension of time to conduct the disciplinary hearing was obtained. Defendants' Ex. A at p.4.

witnesses who had already testified had established his "overwhelming innocence."

Defendant Don found plaintiff guilty of disobeying a direct order and creating a disturbance, but found plaintiff "not guilty" of interference. Plaintiff was sentenced to fifteen days "keeplock," with seven of those days to be spent in SHU. Plaintiff appealed the disciplinary determination to defendant Taylor, however, the appeal was affirmed by defendant Captain Coryer. Plaintiff also filed a grievance regarding this matter, which resulted in a deadlocked decision, but that the deadlock was resolved adverse to plaintiff by defendant Taylor. Plaintiff states that he continued to correspond with defendant Taylor and defendant Coryer, voicing plaintiff's concerns about this issue.

Plaintiff then has a paragraph in his complaint about being removed from a program (R.S.A.T.) and discussing this removal with defendant Coryer, who told plaintiff that he would write to Mr. Baxtor, the director of the program, to see if plaintiff could be reinstated. Plaintiff claims that Mr. Baxtor refused to reinstate plaintiff. Plaintiff then states that he appealed to Commissioner Goord, but Commissioner Goord affirmed. Plaintiff wrote to Ministerial Services, and his complaint was referred to the Inspector General's Office, but that the Inspector General referred the matter back to the Superintendent and to Diversity Management. However, plaintiff states that he has received no response.[4]

Together with their motion for summary judgment, defendants have submitted

---

[4] Plaintiff makes no claim regarding the specifics of his removal from this program, although some of the documents submitted by defendants show that plaintiff was removed from the program for disciplinary reasons. Defendants' Ex. J at p.2.

affidavits of defendants Castaldo, Don, Coryer, and Taylor, together with the facility documents generated as a result of this incident and plaintiff's deposition in this case. Defendant Castaldo states that he was assigned to the night shift on February 19, 2004 in plaintiff's dormitory. Castaldo Aff. ¶ 4. Defendant Castaldo states that from 10:30 p.m. until 6:30 a.m., there is "quiet time" in the dormitories, and that inmates may not talk, play music, or otherwise disturb others in the dormitory. *Id.* ¶ 8. Defendant Castaldo states that at approximately 6:10 a.m. on February 19, 2004, he heard plaintiff praying out loud in his cubicle, in violation of "quiet time rules," and that defendant Castaldo told plaintiff to pray "quietly" to himself so as not to disturb the other inmates. *Id.* ¶¶ 9, 10.

Defendant Castaldo states that plaintiff did not respond, but continued to pray so that he could be heard outside of the cube area. Castaldo Aff. ¶ 11. Defendant Castaldo stated that he gave plaintiff a second order to pray quietly to himself, but plaintiff ignored that order as well. *Id.* ¶ 12. Defendant Castaldo states that other inmates began to complain about the noise, and defendant Castaldo returned to his desk to immediately call the Sergeant and report the disturbance. *Id.* ¶ 14. Defendant Castaldo then states that as he was speaking to the Sergeant, plaintiff approached defendant Castaldo's desk and began talking during Officer Castaldo's conversation with the sergeant. *Id.* ¶ 15. Officer Castaldo ordered plaintiff to return to his cube, and the plaintiff complied, but complained loudly on the way back. *Id.* ¶ 16.

Defendant Castaldo states that he then wrote the misbehavior report, placed

plaintiff on "full cube restriction"[5] pursuant to the Sergeant's directions, and took plaintiff's identification card to insure compliance with full-cube restriction. *Id.* ¶ 18. Defendant Castaldo states that after his shift ended, he turned plaintiff's identification card over to the next officer and had no further contact with plaintiff. *Id.* ¶¶ 19-20. Defendant Castaldo states that he is used to having Muslim inmates who rise early to complete their prayers, and that they are generally cooperative and pray in such a way as not to be heard by other inmates. *Id.* ¶¶ 22-23. Finally, defendant Castaldo states that he wrote the disciplinary report because plaintiff refused to lower his voice when asked, in violation of facility rules. *Id.* ¶ 24.

Defendant Don has submitted an affidavit regarding the conduct of the disciplinary hearing, and defendants have also filed the documents associated with the disciplinary hearing and appeal, including a transcript of the disciplinary hearing. Don Aff., Defendants' Exs. 9-12, and Hearing Transcript (HT). Defendants have also filed the documents associated with the grievance that plaintiff filed in this case in addition to appealing the disciplinary decision as well as plaintiff's letter to defendant Taylor, dated March 11, 2004, together with defendant Taylor's response to that letter. Defendants' Exs. 13-19.

Plaintiff was deposed in this case on September 12, 2005, and nine pages of that deposition have been filed as Defendants' Ex. L. During the deposition, plaintiff testified that defendant Castaldo never told plaintiff to stop praying, he told plaintiff to

---

[5] Full-cube restriction means that an inmate cannot leave his cube area. Castaldo Aff. ¶ 18.

7

"pray to [himself]." Deposition Transcript (DT) at 46.[6] During the deposition, plaintiff also stated that he had only seen defendant Castaldo once before in the housing unit, and that he did not prevent plaintiff from praying on the previous occasion. (DT at 41). At the deposition as well as during his disciplinary hearing, plaintiff speculated that the reason that plaintiff had not been admonished before was that he was further away from the guards' station. (DT at 41, 46)(HT at 6). At his disciplinary hearing, plaintiff stated that "the only reason why I think this incidence [sic] ever happened is because I was so close to the officer." (HT at 6).

### 3. **First Amendment**

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)(citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990). The analysis of a free exercise claim is still governed by the framework set forth in *O'lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987).

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An

---

[6] The court notes that defendants filed only nine pages of what was clearly a much longer transcript. Defendants' Ex. L. Unfortunately, defendants did not number the pages of the exhibit, and instead left only the page numbers of the original deposition which are not in numerical order. This court will refer to the page numbers of the original deposition rather than attempting to re-number the exhibit.

8

individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d at 274 n.4 (citations omitted). Additionally, an inmate does have the right not to be disciplined for refusing to perform tasks that violate his religious beliefs. *See McEachin v. McGinnis*, 357 F.3d 197, 205 (2d Cir. 2004). However, the inmate must first show that the challenged conduct substantially burdens his religious beliefs, and then the defendants must identify the legitimate penological interest that justifies their impinging conduct. *Salahuddin*, 467 F.3d. at 274-75.

In this case, defendants did not question the fact that plaintiff's prayers had to be "audible." In fact, as part of the grievance procedure, Imam Yahya Abdur Rahim wrote a memorandum to K. Besaw the Inmate Grievance Supervisor, stating that the praying person must say the words of an "audible" prayer, even if it is done in "just a whisper or barely audible." Defendants' Ex. I at p.2. The Imam also stated that once a prayer is started, it is forbidden for the praying person to speak with anyone or to do anything that would "invalidate the prayer," such as speaking with someone, eating, or praying in a manner that is not allowed. *Id.*

In this case, no one is questioning plaintiff's sincerely held beliefs. The only issues are whether defendant Castaldo's actions infringed on that belief, and whether the challenged action furthered some legitimate penological interest. Plaintiff in this case was given a misbehavior report and subsequently disciplined, ***not*** for praying and ***not*** for failing to stop praying when Officer Castaldo addressed plaintiff, but for praying too loudly during "quiet time" when Officer Castaldo told plaintiff to pray to

9

himself. In defendant Castaldo's opinion, plaintiff was praying too loudly, in violation of the quiet time rules, and was beginning to bother other inmates.

Plaintiff, himself, admitted at his deposition in this case, that Officer Castaldo *never told plaintiff to stop praying.* HT at 46. Plaintiff also stated at his disciplinary hearing that it was his first night in that particular cube, and that he had never had a problem saying his prayer in the morning before this incident. HT at 4. Plaintiff also specifically stated that the reason that this happened was that plaintiff was so close to the officer's desk. HT at 4, 6. Defendant Don asked plaintiff "[s]o did [defendant Castaldo] hear you at the desk?" *Id.* Plaintiff replied "[y]es he heard me." HT at 4. Plaintiff also admitted at his deposition in this case, that February 19, 2004 was the *only time* that plaintiff ever had problems with his morning prayer. DT at 40.

The court also notes that defendant Don gave plaintiff a relatively minor penalty for his failure to obey a direct order and for creating a disturbance. HT at 13-14. At the hearing, defendant Don explained that he believed that the prayer had to be audible, but that it had to be performed in a very low tone based on the time in question, and if the officer "thinks you are too loud and tells you to quiet down I think you are obligated to abide by the facility rules first." HT at 13. Defendant Don then stated that even though he was going to sentence plaintiff to 15 days keeplock and 15 days loss of various privileges, defendant Don was going to "run the 15 days keeplock" from the time of the incident. *Id.* at p.13-14. Since the hearing took place on March 1, 2004, this meant that plaintiff was going to get credit for SHU time from February 19 (the date of the incident) and was only going to have to spend four more

days in SHU. *Id.* Plaintiff got credit for all the time that he spent in SHU, the outside hospital, and the infirmary.[7] *Id.* Defendant told plaintiff that his sentence was "a very light disposition" for Don. *Id.* at 14.

Thus, it is clear that defendant Don was giving plaintiff the benefit of the doubt and merely finding that defendant Castaldo believed that plaintiff was praying too loudly, and had ordered plaintiff to lower his voice. Plaintiff was being disciplined for failure to abide by defendant Castaldo's legitimate order to pray more quietly. The discipline imposed took into account the mitigating circumstances that plaintiff believed he was praying quietly enough. The imposition and enforcement of a "quiet time" rule at an hour when many inmates may still be sleeping, is certainly a legitimate penological interest as is the requirement that inmates obey direct orders.

Telling someone to pray more quietly is not a "substantial burden" on the inmate's religious beliefs, and disciplining the inmate for failing to abide by that order is a legitimate penological interest, even assuming that plaintiff misunderstood the order that was being given. In any event, plaintiff admitted in his deposition that defendant Castaldo never told plaintiff to stop praying. DT at 46. Plaintiff states that the officer gave him "a direct order to 'pray to yourself.'" *Id.* Plaintiff assumed that "pray to yourself" meant silently. That is not necessarily the case. Thus, this court finds that defendants did not violate plaintiff's First Amendment right to practice his religion.

---

[7] The court notes that plaintiff was already on "cube" confinement from another disciplinary sentence, unrelated to this misbehavior report. HT at 14.

11

**4.      Qualified Immunity**

Qualified immunity protects defendants from liability for acts which do not violate a clearly established constitutional right of which a reasonable defendant would have known. *Scotto v. Almenas*, 143 F.2d 105, 110 (2d Cir. 1998)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 810 (1982)).  The inquiry must be directed at the "objective reasonableness" of the defendants' acts. *Farid v. Goord*, 200 F. Supp. 2d 220, 244 (W.D.N.Y.  2002).

Defendants allege that even if they are found to have violated plaintiff's First Amendment rights, they are entitled to qualified immunity.  Although it is well settled that an inmate has a First Amendment right to practice his religion, as stated above, it is also clear that this right is not unlimited. *Benjamin v. Coughlin*, 905 F.2d at 574. Since defendant Castaldo did not stop plaintiff from praying, and at worst, there appears to have been a misunderstanding about the order given and the loudness of plaintiff's praying, it cannot be said that defendant Castaldo reasonably would have known that his actions on one occasion would violate plaintiff's First Amendment rights.

Since defendant Castaldo did not violate plaintiff's First Amendment rights, none of the other defendants in this case could be held liable for any constitutional violations.  Defendant Don held a proper disciplinary hearing, and defendant Coryer affirmed that hearing.  Plaintiff had three witnesses testify, and it is clear that defendant Don believed that plaintiff needed to say an audible prayer, sentencing him quite leniently under the circumstances.

Defendant Taylor appears to have had very little involvement if any in plaintiff's case. It appear that plaintiff wrote a letter to defendant Taylor, and that defendant Taylor referred it to other staff members for response. The court also notes that the grievance filed by plaintiff was properly investigated and information was also obtained from the Imam. Thus, defendants would all be entitled to qualified immunity if it should somehow be found that defendant Castaldo's actions violated plaintiff's constitutional rights.

## 5.  Miscellaneous Claims

The court notes that the complaint states two causes of action. The first, discussed above, is plaintiff's First Amendment Claim. Complaint at p.5  The second cause of action states that "all medical files are under regulation," and then states "(mental anguish)" under the Eighth Amendment. *Id.*  It appears that this claim is not a separate cause of action, but rather a claim that defendants have caused plaintiff "mental anguish" as the result of their actions. Plaintiff cannot bring a claim for mental anguish under the Prison Litigation Reform Act (PLRA) without a showing of physical injury. 42 U.S.C. § 1997e(e).  Clearly, there was no physical injury in this case. Finally, since defendants have not violated plaintiff's constitutional rights, there can be no claim for mental anguish.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 19) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 13, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge